JOURNAL ENTRY AND OPINION
Plaintiff-appellant, Patricia J. Lehtinen, Executrix for the Estate of David E. Lehtinen (hereinafter plaintiff) appeals the decision of the trial court that granted defendants-appellees' motion for summary judgment. Plaintiff, along with amicus curiae, urges that the trial court erred in determining that R.C. Chapter 1785 precluded the estate from pursuing claims against the defendants relating to the decedent's shareholder interest in the defendants' professional association. For the reasons that follow, we reverse and remand for further proceedings.
Defendant, Drs. Lehtinen, Mervart and West, Inc. (the Association), was organized under R.C. Chapter 1785 to perform neurosurgery services. The Association had three members: Dr. Lehtinen, Dr. Mervart and Dr. West. Each owned a one-third interest in the Association.
Dr. Lehtinen died unexpectedly on December 28, 1997. The Probate Court appointed Mrs. Lehtinen as executrix of his estate on March 3, 1998. Mrs. Lehtinen does not hold a medical license. The defendant doctors continued to treat Dr. Lehtinen as a shareholder with a one-third interest in the Association after his death.[1] The defendant doctors originally provided plaintiff with valuations of Dr. Lehtinen's interest and discussed plans to buy out his interest. However, the doctors sought to defer a buy-out until after the resolution of the malpractice actions that were pending against the Association in the belief that the estate would be responsible for the potential liabilities of the Association along with the rest of the shareholders.
The defendant doctors continued the practice of the Association for a period of time after Dr. Lehtinen's death. However, by 1998 Drs. Mervart and West began negotiations with the Cleveland Clinic to sell the practice. The defendant doctors excluded plaintiff from these negotiations. Both doctors entered into employment agreements with the Clinic and there is some evidence in the record that the doctors either leased or gifted the assets of the Association to the Clinic. Although plaintiff received salary, profit-sharing, and bonus payments that Dr. Lehtinen had earned, defendants did not make any payments to plaintiff for Dr. Lehtinen's shareholder or creditor interest in the corporation.
More than a year after Dr. Lehtinen's death, plaintiff filed a complaint against the Association and Drs. Mervart and West for an accounting, conversion, claim on account and seeking a constructive trust. Plaintiff later amended the complaint to add a count for breach of fiduciary duty against the defendant doctors as the majority shareholders of the Association.
All defendants moved for summary judgment asserting that the estate lacked standing to maintain the claims advanced in the amended complaint and that the claims failed on the merits. The trial court granted summary judgment in favor of all defendants as to all counts in the amended complaint. Plaintiff appeals assigning four assignments of error for our review. We will address Assignments of Error I, II and III together as they all address the effect of R.C. Chapter 1785 on plaintiff's standing.
 I. THE TRIAL COURT ERRED IN HOLDING THAT THE EXECUTRIX COULD NOT SUCCEED, BY OPERATION OF LAW, TO THE STOCK INTEREST OF DR. LEHTINEN IN THE DEFENDANT PROFESSIONAL CORPORATION.
 II. THE TRIAL COURT ERRED IN CONSTRUING THE PROFESSIONAL ASSOCIATIONS ACT, O.R.C. CH. 1785, AS WORKING A FORFEITURE OF THE ENTIRETY OF DR. LEHTINEN'S INTEREST IN THE PROFESSIONAL CORPORATION.
 III. THE TRIAL COURT ERRED IN CONCLUDING THAT THE EXECUTRIX, APPOINTED BY THE PROBATE COURT, DID NOT HAVE STANDING TO ASSERT THE INTEREST OF DR. LEHTINEN.
In an appeal concerning an award of summary judgment, we employ a de novo review. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581,585. Summary judgment is appropriate where:
 (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-70.
Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385.
In moving for summary judgment, defendants asserted that R.C. 1785.07
prohibits the passage of Dr. Lehtinen's shares into the estate for purposes of administration. The statute provides as follows:
 A shareholder of a professional association may sell or transfer that shareholder's shares in the association only to another individual who is duly licensed, certified, or otherwise legally authorized to render within this state the same professional service as that for which the association was organized or, in the case of a combination of professional services described in division (B) of section 1785.01 of the Revised Code, to render in this state any of the applicable types of professional services for which the association was organized.
R.C. 1785.07.
On appeal, plaintiff, along with amicus curiae, maintains that the law, rather than Dr. Lehtinen, caused the shares to pass into the estate. We agree. The statute is clear and unambiguous in forbidding the shareholder from selling or transferring shares to an unlicensed individual; negating any need to resort to statutory construction. Symmes Twp. Bd. of Trustees v. Smyth (2000), 87 Ohio St.3d 549, 553, citing Meeks v. Papadopulos (1980), 62 Ohio St.2d 187, 190. Yet, the statute is silent as to the disposition of the shareholder's interest in the Association upon the death or disqualification of the shareholder.
Accordingly, we turn to R.C. 1785.08 which incorporates the provisions of the general corporation act, R.C. Chapter 1701, when there is no direct conflict with R.C. Chapter 1785. The shares of a corporation are personal property. R.C. 1701.24(A). Likewise, shares in a professional association are the personal property of the shareholder. See Cruz v. South Dayton Urological Associates, Inc. (1997), 121 Ohio App.3d 655,665-666. `The title to personal property of a deceased person passes to his personal representative, his executor or administrator, pending the settlement of the estate * * *.' State ex rel. Toma v. Corrigan (2001),92 Ohio St.3d 589, 592, citing Winter's Nat'l Bank Trust Co. v. Riffe (1965), 2 Ohio St.2d 72.
Although the shares pass into the estate, the professional association must still comply with the provisions of R.C. Chapter 1785, including R.C. 1785.06 which requires the Association to file an annual statement with the Ohio Secretary of State certifying that all of the shareholders are duly licensed, certificated, or otherwise legally authorized to render within this State the same professional service for which the association was organized. R.C. 1785.06. If the association fails to make this certification, the statute compels the Secretary of State to cancel the articles of incorporation. Id. This provision safeguards the statute's purpose of preventing non-licensed individuals from controlling a professional corporation.
In this case, the Association failed to make any provision for the repurchase of shares in the event of the death or disqualification of the shareholder. This failure does not inure to the benefit of the Association or the remaining shareholders by operating a complete forfeiture of the decedent's interest. Instead, the provisions of R.C.1785.06 would effectively result in the cancellation of the Association's articles of incorporation. Unless the licensed shareholders repurchased the shares from the estate or otherwise satisfied the requirements for reinstatement provided in the statute, the law would compel a winding up of the affairs of the Association. R.C. 1701.90[2] and 1701.91(A)(2)(a)[3].
In 1998, the Association inaccurately represented to the secretary of state that Dr. Lehtinen, a deceased individual, owned a one-third interest in the Association and that this deceased person was duly licensed, certified, or otherwise legally authorized to render professional services within this state. However, as set forth above, the estate held this interest upon Dr. Lehtinen's death. Accordingly, the Association's articles of incorporation should have been canceled pursuant to R.C. 1785.06, dissolved, and the assets distributed to all the shareholders, including the estate. Ibid. Instead, the defendants argue that the law simply operates a forfeiture of the entire amount of Dr. Lehtinen's interest in the Association which would essentially leave the estate, and his family, deprived of the value of his life's work.
While the existence of a non-licensed shareholder could result in the cancellation of the association,[4] there is no provision in R.C. Chapter 1785 that requires, or even suggests, that a non-licensed shareholder must forfeit the entire value of his or her interest in the professional association. Where the statute does not explicitly provide for forfeiture when title to the shares passes by law to a non-licensed individual, we cannot read such a clause into the statute. Erb v. Erb (2001), 91 Ohio St.3d 503, 507, citing Cleveland Elec. Illuminating Co. v. Cleveland (1988), 37 Ohio St.3d 50, paragraph three of the syllabus.
The case law supports the conclusion that the decedent's interest in the Association passes into the estate. E.g., Colaluca v. Climaco, Climaco, Seminatore, Lefkowitz Garofoli Co., L.P.A. (1995),72 Ohio St.3d 229 (an attorney resigning from a professional association retains his interest in the association)[5]; accord Cruz,121 Ohio App.3d 655, 665-666 (termination of a doctor-shareholder did not deprive him of [his] personal property or his interest in the professional association as his shares in the association remain in his name). Similarly, a shareholder's interest in a professional association is not forfeited upon death or disqualification of the shareholder. See Banfield v. Turner (1999), 131 Ohio App.3d 213 (estate permitted to pursue claims on behalf of deceased shareholder against other shareholders in a professional association).
As executrix of the estate, plaintiff is empowered to commence litigation to recover assets and preserve the personal property coming into the estate's possession. Floyd v. Clyne (1958), 108 Ohio App. 16. Thus, plaintiff has standing to pursue these claims.
For the foregoing reasons, plaintiff succeeded by operation of law to the stock interest of Dr. Lehtinen; R.C. 1785 does not operate a forfeiture of Dr. Lehtinen's interest in the Association; and plaintiff has standing. Assignments of Error I, II and III are sustained.
 IV. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THERE ARE NUMEROUS ISSUES OF FACT IN DISPUTE.
In the final assigned error, plaintiff contends that the trial court erred in granting summary judgment because numerous issues of fact remain in dispute. Defendants counter that the record supports summary judgment on the merits of the following claims: conversion, accounting in equity, action on account, breach of fiduciary duty, and constructive trust.
`Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.' State ex rel. Toma v. Corrigan (2001), 92 Ohio St.3d 589, 592, quoting Joyce v. Gen. Motors Corp. (1990), 49 Ohio St.3d 93. It is undisputed that the defendants have not paid any amount to plaintiff for the decedent's shareholder or creditor interest in the Association after his death in 1997. Construing all the evidence in a light most favorable to plaintiff, reasonable minds could conclude that defendants have converted the value of Dr. Lehtinen's one-third interest in the Association by failing to make a timely distribution of the Association's assets and/or failing to timely redeem his shares. Summary judgment was not warranted on the merits of the conversion claim.
The defendant doctors moved for summary judgment on the breach of fiduciary duty claim on the sole contention that R.C. 1785.07 precluded the estate from receiving the shares. Because Dr. Lehtinen's personal property passed into the estate by operation of law and because plaintiff has standing to recover and preserve the assets in its possession, summary judgment was not warranted on the breach of fiduciary duty claim.
Finally, contrary to defendants' position on summary judgment, plaintiff can assert the fiduciary relationship between the parties as grounds to compel an accounting. See Estate of Banfield v. Turner (1999), 131 Ohio App.3d 213, 220. The record contains conflicting evidence as to the value of Dr. Lehtinen's interest in the Association. We find that an accounting is necessary to determine the value of Dr. Lehtinen's interest in the Association and the rights of plaintiff, as the executrix, to maintain these claims. See Baccelieri v. Heath (1953),158 Ohio St. 481, 487.
Defendants did not present or argue any grounds for summary judgment on the claim for constructive trust at the trial court level. However, because the court granted summary judgment on all the claims contained in the amended complaint, we address this claim on appeal. Defendants, as the parties moving for summary judgment, bore the burden of showing that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law on this claim. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274. Because defendants did not substantively address this claim at the trial court level, they failed to satisfy the burden imposed by Civ.R 56 and were not entitled to summary judgment on the claim for constructive trust.
Assignment of Error IV is sustained.
Judgment reversed and cause remanded for a trial on the merits.
It is ordered that appellant recover of appellees her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and KENNETH A. ROCCO, J., CONCUR.
[1] On June 30, 1998, the Association filed its Annual Report with the Ohio Secretary of State certifying David E. Lehtinen (Deceased 12/28/97) as a shareholder licensed to render professional services. In February 1999, the Association's tax return reflected Dr. Lehtinen's one-third shareholder interest.
[2] R.C. 1701.90 provides in pertinent part that [w]henever, * * * the articles of a corporation have been cancelled * * *, a receiver is appointed to wind up the affairs of the corporation, all the claims, demands, rights, interests, all claims, demands, rights, interests, or liens of creditors, claimants, and shareholders shall be determined as of the day on which the receiver was appointed. We note that because of the defendants' representations, the articles were not properly canceled and a receiver was not appointed. Accordingly, appointing a receiver at this point would deprive the estate of the value of the assets as they existed at the time of Dr. Lehtinen's death.
[3] R.C. 1701.91 provides for judicial dissolution of a corporation and its affairs wound up when it is established [t]hat its articles have been canceled * * * and that it is necessary in order to protect the shareholders that the corporation be judicially dissolved.
[4] In the absence of a buy-sell agreement, a professional association could avoid this result by simply buying back the shares of the deceased or disqualified shareholder; enabling it to comply with R.C. 1785.06.
[5] Unlike the situation here, the professional association in Colaluca could still certify that all shareholders maintained the proper licensing even if it did not buy back the resigning shareholder's interest.